A93A1399. QUEEN v. THE STATE.
(436 SE2d 714)

Beasley, Presiding Judge.

Queen appeals from his judgment of conviction and sentence entered on a jury verdict for theft by conversion of payments made to him for improvement of real property, OCGA § 16-8-15.

1. Appellant contends that the court erred in denying his motion for a directed verdict of acquittal based on the State's failure to establish venue in Whitfield County.

Mr. and Mrs. Kenemer entered into a written contract with appellant, a building contractor, to construct a log home at a site in Walker County at a cost of $104,000. The parties agreed to an initial draw of $48,600, but prior to the approval of the Kenemers' loan, appellant requested a deposit of $4,000 to purchase materials. Appellant instructed the Kenemers to deliver a check for $4,000 to a Barbara Fox at the Dairy Queen in the Walnut Square Mall in Dalton at a designated time. The court took judicial notice that the City of Dalton is located in Whitfield County. The Kenemers delivered a second check for $44,600 to appellant at his place of business in Gordon County. Both checks were deposited into appellant's account.

During the next several months, work on the house was sporadic. After several subcontractors and material suppliers placed liens on the property and efforts to reach appellant proved fruitless, Mr. Kenemer swore out a warrant charging him with conversion of payments for real property improvements.

OCGA § 16-8-15 provides: "(a) any . . . contractor . . . who with intent to defraud shall use the proceeds of any payment made to him on account of improving certain real property for any other purpose than to pay for labor or service performed on or materials furnished by his order for this specific improvement while any amount for which he may be or become liable for such labor, services, or materials remains unpaid commits a felony. . . . (b) A failure to pay for material or labor furnished for such property improvements shall be prima-facie evidence of intent to defraud."

"[T]he crime shall be considered as having been committed in any county in which the accused exercised control over the property which was the subject of the theft." OCGA § 16-8-11.

"In theft by conversion cases, where the allegedly converted property is money, we see two basic options available to the state regarding venue. First, the state can proceed in the county where the accused received the money. There is sound authority that the ac-

cused exercised control over the money there. [Cits.] Second, the state can produce evidence tracing funds disbursed in one county (where the case is being prosecuted) back to the account or other source in the origin county, showing further that the funds were not disbursed in accordance with the contract provisions governing the use of the funds." *Stowe v. State*, 163 Ga. App. 535, 537 (4) (295 SE2d 209) (1982).

The evidence showed that the $4,000 check was delivered in Whitfield County. Appellant contends that because the funds were delivered to Barbara Fox, and not directly to him, the State failed to establish that he exercised control over the funds in that county. First, by appellant's own admission, he acknowledged receiving payment of $48,600 from the Kenemers, some of which he spent on something other than the construction of their home. Second, the $4,000 check was tendered to Barbara Fox at appellant's instruction. She was clearly acting as his agent for purposes of receiving the funds. See generally *Hutchens v. State*, 174 Ga. App. 507 (1) (330 SE2d 436) (1985). The funds were ultimately deposited into appellant's account and were applied to a use unauthorized by the contract. Venue in Whitfield County was sufficiently established. OCGA § 16-8-11; *Stowe*, supra.

2. Appellant contends that the trial court failed to consider the factors set out in OCGA § 17-14-10 or make written findings in ordering restitution to the Kenemers. He also asserts that a certain type of interest is not a proper item of restitution.

We do not address these issues because the sentence is void due to its illegality. The court sentenced defendant to "confinement for a period of 5 years to serve, restitution to be paid $22,167.00." A restitution order is one which requires an offender to make restitution as a condition of "relief granted to an offender." OCGA § 17-14-2 (8). " 'Relief' " as to sentencing means "any suspended or probated sentence, including probation imposed under Article 3 of Chapter 8 of Title 42, . . ." Queen was not given a suspended or probated sentence, which would allow the opportunity for restitution to be earned and paid, but rather a prison term. Restitution constituted no "relief" and in any event may not, under the statute, be joined with a prison term.

It appears from the transcript of the sentencing hearing that the court intended the sentence to be five years, period. OCGA § 17-14-2 (6) allows restitution to be imposed when the form of "relief" is parole or other conditional release from incarceration, which relief can be granted by the State Board of Pardons and Paroles as an "[o]rdering authority." OCGA § 17-14-2 (5). After the court pronounced the five-year sentence, it "recommended that as a condition of any parole that restitution be made." The court itemized the com-

ponents of restitution, the amounts of each, and the total amount, as findings of fact for the aid of the Board in the event it chose to act. It created the opportunity so as to facilitate the Board's potential consideration of restitution by marshalling the evidence of amount when it would be readily available, locally, in connection with the trial of the case.

Thus it was unnecessary for the court to consider the listed factors in OCGA § 17-14-10, as is required of the restitution-ordering authority by the statute, or to make specific written findings with respect to them. See *Cannon v. State*, 246 Ga. 754, 756 (3) (272 SE2d 709) (1980); *Patterson v. State*, 161 Ga. App. 85, 86 (5) (289 SE2d 270) (1982); *Garrett v. State*, 175 Ga. App. 400 (333 SE2d 432) (1985); *Woods v. State*, 205 Ga. App. 500 (422 SE2d 670) (1992).

The case must be returned to the trial court for correction of the error. If the written judgment did not reflect the sentence imposed, as appears to be the case, it should be corrected. If the sentence intended was as written and therefore invalid for the reasons heretofore explained, the court must impose a valid sentence.

*Judgment affirmed in part, sentence vacated, and case remanded for entry of a new judgment. Cooper and Smith, JJ., concur.*

DECIDED OCTOBER 5, 1993 —
RECONSIDERATION DENIED OCTOBER 20, 1993.

*J. Tracy Ward*, for appellant.
*Jack O. Partain III, District Attorney, Melvin E. Hyde, Jr., Assistant District Attorney*, for appellee.